**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DARREN R. AXTELL,

               Plaintiff,

v.                                                    Case No:   6:20-cv-2008-LHP

COMMISSIONER OF SOCIAL
SECURITY

               Defendant.

_____

## MEMORANDUM OF DECISION[1]

Darren R. Axtell ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income benefits ("SSI").   Doc. No. 1.   Claimant raises one argument challenging the Commissioner's final decision, and, based on that argument, requests that the matter be reversed and remanded for further administrative proceedings.   Doc. No. 29, at 21, 31.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and

_____

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.   *See* Doc. Nos. 28, 30–31.

that the final decision of the Commissioner should be affirmed.   *Id.* at 31.   For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

## I.     PROCEDURAL HISTORY.

On November 21, 2014, Claimant filed an application for SSI, alleging a disability onset date of January 1, 2010.   R. 110, 128, 417.   Claimant later amended his disability onset date to January 15, 2015.   R. 128, 430.   Claimant's application was denied initially and on reconsideration, and he requested a hearing before an ALJ.   R. 74, 110, 198.   A hearing was held before the ALJ on May 8, 2017, after which the ALJ issued an unfavorable decision.   R. 74, 125–40.   On March 29, 2018, the Appeals Council granted review and remanded the matter to the ALJ.   R. 146–49.   On April 7, 2018, the ALJ held a second hearing, after which the ALJ issued another unfavorable decision.   R. 58, 151–69.   The Appeals Council again granted review, and remanded the matter to the ALJ on March 21, 2019.   R. 176–80.   On March 2, 2020, the ALJ held a third hearing, after which the ALJ issued a third unfavorable decision.   R. 12–28, 37.[2]   On October 8, 2020, the Appeals Council denied Claimant's request for review of that decision, rendering the third unfavorable decision issued by the ALJ the final decision of the Commissioner.   R. 1–6.   Claimant now seeks review of that final decision by this Court.   Doc. No. 1.

---

[2] A different ALJ, John Loughlin, issued the third decision.   *See* R. 28.   The first two decisions were issued by ALJ Thurman Anderson.   *See* R. 140, 169.

## II.    THE ALJ'S DECISION.[3]

The instant matter came before the ALJ on remand from the Appeals Council.

R. 15.   In the decision under review, the ALJ summarized the directives from the

Appeals Council as follows:

- Obtain updated medical records from the claimant's treating sources consistent with 20 CFR 416.912.

- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.9204c).

- Evaluate claimant's obesity pursuant to Social Security Ruling 02-1p.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 85-16 and 96-8P).

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12 and 83-14).   The hypothetical questions should reflect the specific capacity limitations established by the record as a whole.   [The ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966).   Further, before relying on the vocational expert evidence [The ALJ] will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its

---

[3] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   Doc. No. 29.   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

*See id.   See also* R. 179.

In the decision, after careful consideration of all of the evidence of record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 416.920(a). R. 15–28.[4]   The ALJ found that Claimant had not engaged in substantial gainful activity since November 21, 2014, the application date.   R. 18.   The ALJ further concluded that Claimant suffered from the following severe impairments:   obesity; lumbar degenerative disc disease; chronic obstructive pulmonary disease (COPD); liver disease; chronic hepatitis B, hepatocellular disease, and hepatic echotexture; alcohol use disorder; cannabis use disorder; stimulant use disorder; opiate dependence disorder; cannabis use disorder, in sustained remission; generalized anxiety disorder; major depressive disorder; adjustment disorder with mixed

---

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled:   (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

anxiety and depressed mood; panic disorder; anti-social personality disorder; social phobia; avoidant personality disorder; post-traumatic stress disorder (PTSD); malingering; and borderline intellectual functioning.   *Id.*[5]   The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 18–22.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform medium work as defined in the Social Security regulations,[6] except Claimant:

> Can occasionally climb ladders, ropes and scaffolds, can occasionally be exposed to unprotected heights and moving machinery parts and can occasionally operate a motor vehicle and/or heavy equipment. He can have occasional exposure to dust, noxious odors and fumes, poor ventilation, extreme cold, extreme heat, and wetness.   He is able to understand and remember simple instructions, make simple work related decisions, carryout simple instructions, can occasionally deal with changes in a routine work setting, cannot perform work which requires a specific production rate, such as assembly line work and/or hourly quota work, and can occasionally deal with coworkers and the public.

---

[5] The ALJ concluded that Claimant's hepatitis C, dermatitis affecting his bilateral feet, hypertension, thrombocytopenia, and gastroesophageal reflux disorder were not severe impairments.   R. 18.

[6] Pursuant to the Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.   If someone can do medium work, [the SSA] determine[s] that he or she can also do medium, light, and sedentary work."   20 C.F.R. §§ 404.1567(c), 416.967(c).

R. 22.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work as a "roofing helper."   R. 27.   However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform; in particular, representative, medium-exertion unskilled jobs to include lamination assembler; hand packager; and store laborer.   R. 27–28. Accordingly, the ALJ concluded that Claimant was not disabled from the November 21, 2014 application date through the date of the decision.   R. 28.

## III.   STANDARD OF REVIEW.

Because Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to

support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises one assignment of error:   whether the ALJ failed to properly weigh the medical opinions of record, specifically the opinions of Claimant's treating psychologists, Dr. Vida L. Tyc, Ph.D., and Dr. Richard T. Elmore, Jr., Ph.D.   Doc. No. 29, at 21–28. Claimant contends that the ALJ's findings at steps three through five of the sequential evaluation process, including the RFC determination, conflict with the opinions of these psychologists, as well as the record as a whole.   *Id.* at 22.[7]

---

[7] In the joint memorandum, Claimant also briefly mentions that Dr. Philip Farber, Ph.D. stated that Claimant "demonstrated impairment in long term, short term, and immediate memory," which Claimant says is consistent with findings on examination by other physicians.   Doc. No. 29, at 24.   It is not clear whether Claimant, by this perfunctory argument, is suggesting that the ALJ erred in failing to weigh Dr. Farber's opinions.   S*ee*

An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   At the fourth step of the sequential evaluation process, the ALJ must determine Claimant's RFC.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments," which includes consideration of "all the relevant medical and other evidence in the case."   *Id.* (citations and quotations omitted).

---

*id.* To the extent that Claimant has not waived this argument by failing to sufficiently brief it, *see generally N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."), the argument is unpersuasive because, even assuming that Dr. Farber rendered a medical opinion, Claimant identifies nothing from Dr. Farber that is inconsistent with the ALJ's RFC determination.   *See D'Orazio v. Comm'r of Soc. Sec.*, No. 6:16-cv-604-Orl-37DCI, 2017 WL 2122960, at *4 (M.D. Fla. Apr. 24, 2017), *report and recommendation adopted*, 2017 WL 2103465 (M.D. Fla. May 15, 2017) (failure to weigh medical opinion is harmless if the claimant fails to demonstrate any specific functional limitations that are more restrictive than the ALJ's RFC determination (citing *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008)).

Claimant also states in one sentence of the joint memorandum that the ALJ "never provides any rationale for leaving interactions with supervisors unrestricted" in the RFC determination.   Doc. No. 29, at 22.   But, to the extent that Claimant is intending to make any argument in this regard, Claimant fails to develop it, rendering it waived.   *See generally McClain of Georgia, Inc.*, 138 F.3d at 1422.   Notably, the two medical opinions which Claimant addresses in detail—those of Dr. Tyc and Dr. Elmore—state either that Claimant was "unlimited or very good" in his ability to work in coordination with others, to get along with coworkers, and to "accept instructions and respond appropriately to criticism from supervisors," or that he performed satisfactorily in these categories.   *See* R. 943, 995.

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources.   *See* 20 C.F.R. § 416.945(a)(3).   The ALJ must consider a number of factors when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   *Id.* § 416.927(c). [8]   "These factors apply to both examining and non-examining physicians." *Huntley v. Soc. Sec. Admin., Comm'r,* 683 F. App'x 830, 832 (11th Cir. 2017) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)). [9]

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary.   *See* 20 C.F.R. § 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence).   "The requisite 'good cause' is not provided by the report of a nonexamining physician because the opinion of such a

---

[8] Although the SSA regulations have been amended effective March 27, 2017, the new regulations apply only to applications filed on or after that date.   *See* 20 C.F.R. §§ 404.1520c, 416.920c.   Because Claimant filed his SSI application prior to March 27, 2017, the rules in 20 C.F.R. § 416.927 govern here.

[9] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

person is entitled to little weight if it contradicts the opinion of the claimant's treating physician." *Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir. 1987).

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the assigned weight may prevent the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id.*

As discussed above, here, Claimant's arguments relate to the ALJ giving little weight to the opinions of two of Claimant's treating psychologists, Dr. Tyc and Dr. Elmore.   The opinions of each medical professional will be addressed in turn.[10]

---

[10] The Court notes that although the ALJ gave little weight to Drs. Tyc and Elmore's opinions, several limitations to which the doctors opined are consistent with the RFC determination.   *Compare* R. 22 (RFC limiting Claimant to understanding and remembering simple instructions, making simple work-related decisions, carrying out simple instructions, occasionally dealing with changes in a routine work setting, excluding work with a specific production rate, such as assembly line work and/or hourly quota work, and occasionally dealing with coworkers and the public), *with* R. 943–45 (Exhibit 13F), *and* R. 995–97 (Exhibit 19F).   In the joint memorandum, Claimant appears to take issue with the ALJ's consideration of Drs. Tyc and Elmore's opinions that Claimant is "seriously limited" in his ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   *See* Doc. No. 29.   Dr. Tyc also opined that Claimant would be absent from work about three days per month due to his impairments, while Dr. Elmore opined that Claimant would be absent for more than four days per month based on same.   *See* R. 944, 996.

A.     Dr. Tyc.

Claimant asserts, and the Commissioner does not dispute, that Dr. Tyc is Claimant's treating psychologist.   *See* Doc. No. 29.   On March 13, 2017, Dr. Tyc's reviewed and signed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) form, which relates to Claimant from the time period beginning July 13, 2015 to present.   R. 943–45 (Exhibit 13F).

On that form, as it relates to Claimant's mental abilities and aptitudes needed to do unskilled work, Dr. Tyc opined that Claimant was "unlimited or very good" in the categories of maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.   R. 943.   Dr. Tyc further opined that Claimant was "limited but satisfactory"[11] in his ability to remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention for a two-hour segment;

_____

[11] "Limited but satisfactory" was defined as "patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week."   R. 943.

sustain an ordinary routine without special supervision; make simple work-related decisions; respond appropriately to changes in routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions. *Id.* Dr. Tyc also opined that Claimant was "seriously limited"[12] in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* With regard to Claimant's most serious limitations, Dr. Tyc stated that "it appears that client experiences chronic fatigue which may make it difficult for him to perform at a consistent pace without frequent rest periods." *Id.*

Dr. Tyc also opined that, as to Claimant's mental abilities and aptitudes needed to do semiskilled and skilled work, that Claimant was "limited but satisfactory" in his ability to carry out detailed instructions and deal with stress of semiskilled and skilled work, as well as "seriously limited" in his ability to understand and remember detailed instructions and to set realistic goals or make plans independently of others. R. 944. As for Claimant's ability to understand/remember detailed instructions, Dr. Tyc stated that "Mr. Axtell reports difficulty with concentration and memory which would make remembering

---

[12] "Seriously limited" was defined as "patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week. R. 943.

detailed instructions especially difficult." *Id.*   And with regard to setting realistic goals or making plans independently, Dr. Tyc stated that "Mr. Axtell additionally struggles with goal setting and carrying out goals once they are established." *Id.*

As to Claimant's mental abilities and aptitude needed to do particular types of jobs, Dr. Tyc further opined that Claimant was "unlimited or very good" in his ability to interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and use public transportation.   R. 944.   Dr. Tyc also opined that Claimant was "limited but satisfactory" in his ability to travel in unfamiliar places.   *Id.*

Finally, Dr. Tyc opined that Claimant's impairments would cause him to be absent from work about three days per month.   R. 944.   And Dr. Tyc stated that Claimant could not manage benefits in his own best interest based on the following: "This is a difficult question to address as Mr. Axtell has struggled with substance in the past and has mentioned experiencing fear in regard to his ability to manage finances properly."   *Id.*

In the decision, the ALJ gave little weight to Dr. Tyc's opinions, as follows:

> Dr. Tyc, a psychologist that treated the claimant, completed a questionnaire containing opinions on his mental ability to do work-related activities (13F).   In it, Dr. Tyc gave the opinion that the claimant is unlimited, very good, or satisfactory in most aspects of mental functioning.   However, she found serious limitations in his ability to maintain pace without psychological interruptions and unreasonable rest breaks, his ability to understand and remember detailed instructions, and his ability to set realistic goals and plan

independently (13F/1-2).   Moreover, in her opinion the claimant would miss three or more days of work per month (13F/2).   Although Dr. Tyc has treated the claimant, her opinion is internally inconsistent because she assessed the vast majority of limitations as "very good" or "limited but satisfactory", which generally does not align with serious functional impairment (11F; 13F).   In particular, she placed a mark in the box indicating the claimant's ability to maintain regular attendance and be punctual within customary tolerances would be "unlimited or very good", which is directly at odds with her estimate that the claimant would be absent from work three or more times per month (13F/1).   Furthermore, Dr. Vida's opinion is inconsistent with other clinical findings in the record, none of which showed such crippling social anxiety, inability to attend appointments, or frequent decompensation episodes as to support a work-preclusive level of absenteeism (Hearing Testimony; 4E; 5E; 8F/4; 9F/7-8; 10F/30, 38, 44, 49; 12F/7; 19F; 22F/5).   Even the claimant's hearing testimony was devoid of claims that would support frequent absenteeism, as he failed to raise commonly related allegations such as trouble getting out of bed due to depression and anxiety (Hearing Testimony).   Finally, Dr. Tyc's assessment notes a supporting basis of "chronic fatigue which may make it difficult for him to perform at a consistent pace without frequent rest periods", a physical assessment outside of her expertise as a Ph.D. mental health clinician, further weakening the opinion's support (20 CFR 416.927(c)(3), (c)(5)), (13F/1).   For these reasons, Dr. Tyc's opinion receives little weight.

R. 25–26.

Thus, the ALJ gave little weight to Dr. Tyc's opinions because they were: (1) internally inconsistent; (2) inconsistent with other evidence in the record, including the testimony from the hearing and the medical evidence of record; and/or (3) outside of Dr. Tyc's expertise.   *See id.*

In the joint memorandum, Claimant first suggests that the ALJ erred in finding Dr. Tyc's opinions internally inconsistent because Dr. Tyc's (and Dr.

Elmore's) treatment records actually support more limitations than reflected on the form, and that Dr. Tyc was being conservative in her assessment.   Doc. No. 29, at 24.   According to Claimant, Dr. Tyc's "opinions need not include all the supporting medical findings provided they can be easily discovery by a careful review of the treatment notes."   *Id.* at 24–25.   Claimant does not address, however, the actual findings by the ALJ regarding the internal inconsistencies in Dr. Tyc's opinions. *See id.*

Upon consideration, Claimant's first argument is unpersuasive.   An internal inconsistency may provide good cause to give less than controlling weight to a treating physician's opinions.   *See, e.g., Stewart v. Comm'r of Soc. Sec.*, No. 6:19-cv-413-Orl-LRH, 2020 WL 3205483, at *4–5 (M.D. Fla. June 15, 2020); *Merritt v. Comm'r of Soc. Sec.*, No. 6:14-cv-914-Orl-GJK, 2015 WL 5735192, at *3 (M.D. Fla. Sept. 29, 2015); *Wilson v. Colvin*, No. 3:14-cv-840-J-JRK, 2015 WL 5542469, at *7 (M.D. Fla. Sept. 18, 2015).   On review of Dr. Tyc's assessment, the ALJ's recognition that Dr. Tyc's opinions were internally inconsistent "because she assessed the vast majority of limitations as 'very good' or 'limited but satisfactory,' which generally does not align with serious functional impairment" is supported by the record.   *See* R. 943–45.   And the ALJ could logically construe Dr. Tyc's opinions as to Claimant's aptitude for attendance as internally inconsistent.   *Compare* R. 943 (opining that Claimant had an "unlimited or very good" ability or aptitude to "maintain regular

attendance"), *with* R. 944 (opining that Claimant's impairments would cause him to be absent from work about three days per month).   Accordingly, Claimant's first argument is unpersuasive.

Claimant next takes issue with the ALJ's finding that Dr. Tyc's opinions were "inconsistent with other clinical findings in the record, none of which showed such crippling social anxiety, inability to attend appointments, or frequent decompensation episodes as to support a work-preclusive level of absenteeism." Doc. No. 29, at 26.   Claimant contends that a mere failure of Dr. Tyc's treatment notes to reflect the opined limitations does not render the opinions inconsistent with the treatment notes.   *Id.* (relying on *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 735–36 (11th Cir. 2017)).   Claimant, however, never develops this argument, nor does he address the ALJ's finding of inconsistency between Dr. Tyc's opinions and the record evidence in any detail, including the records the ALJ cites in support. *See* Doc. No. 29, at 26–27.[13]   And upon review of the records cited by the ALJ, substantial evidence supports the ALJ's conclusion that the records do not demonstrate "crippling social anxiety, inability to attend appointments, or frequent

---

[13] Instead, Claimant appears to be suggesting that Dr. Tyc's opinions were consistent with her own treatment notes, and that Dr. Tyc's treatment notes were not required to reflect the functional limitations to which she opined.   *See* Doc. No. 29, at 26. While the undersigned has no quarrel with these general principles, *see Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 735 (11th Cir. 2017), Claimant's suggestions are inapposite to the ALJ's conclusion, however, that Dr. Tyc's opinions were inconsistent with the *other* evidence of record.

decompensation episodes as to support a work-preclusive level of absenteeism," which could be construed as inconsistent with Dr. Tyc's opinions.   *See* R. 473–80 (Exhibit 4E (third-party adult function report)); R. 481–88 (Exhibit 5E (adult function report completed by Claimant)); R. 769–72 (Exhibit 8F, psychological evaluation completed by Dr. Susan Sullivan, Ph.D); R. 779–80 (Exhibit 9F, clinical evaluation); R. 831, 839, 845, 850, 919, 1092 (Exhibits 10F, 12F & 22F, medical records from Brevard Health Alliance); R. 995–97 (Exhibit 19F, medical opinions of Dr. Elmore, which state, in part, that Claimant is unlimited in his ability to maintain regular attendance, and that he is satisfactory in his ability to complete a normal workday/workweek without interruption from his symptoms).   An ALJ may properly assign little weight to the opinion of a treating physician when the opinion is inconsistent with or unsupported by the medical evidence of record.   *See, e.g.*, *Burgess v. Comm'r of Soc. Sec.*, No. 6:18-cv-0094-Orl-DCI, 2019 WL 338668, at *4 (M.D. Fla. Jan. 28, 2019); *Crowley v. Berryhill*, No. 3:18-cv-460-J-JBT, 2019 WL 587423, at *2 (M.D. Fla. Jan. 3, 2019); *Sexton v. Comm'r of Soc. Sec.*, No. 8:12-cv-2341-T-30TBM, 2013 WL 6623928, at *6 (M.D. Fla. Dec. 16, 2013).   Accordingly, Claimant's second argument is unpersuasive.

Finally, Claimant argues that the ALJ erred in giving little weight to Dr. Tyc's opinions by noting that Claimant suffered from chronic fatigue and would require frequent rest periods because it "assumes Dr. Tyc's limitations were based solely on

[Claimant's] chronic fatigue."   Doc. No. 29, at 27.   On review, this argument is also unpersuasive.   On the medical opinion form, Dr. Tyc specifically stated that the Claimant "experiences chronic fatigue which may make it difficult for him to perform at a consistent pace without frequent rest periods."   R. 943.   This statement was made in response to a specific question requiring an explanation for limitations "falling in the three most limited categories" identified on the form, and the medical/clinical findings supporting such assessment.   *See id.*   Given that Dr. Tyc marked Claimant as "seriously limited" in only two categories—regarding completing a normal workday/workweek without interruptions and performing at a consistent pace—and there were no more serious limitations to which Dr. Tyc opined, Dr. Tyc's explanation about Claimant's chronic fatigue necessarily related to those two categories of serious limitations.   *See id.*   Thus, Claimant's third argument that the ALJ somehow inappropriately "assumed" that Dr. Tyc's opinion about Claimant's chronic fatigue was the sole basis for the opined limitations is unavailing.   Notably, Claimant does not even address the ALJ's finding that a physical assessment of chronic fatigue is outside of Dr. Tyc's area of expertise.   *See* Doc. No. 29, at 27.

In sum, Claimant essentially asks the Court to reweigh the evidence as it relates to Dr. Tyc's opinions, which the Court declines to do.   *See Hall v. Comm'r of Soc. Sec.*, No. 6:09-cv-908-Orl-GJK, 2010 WL 1252180, at *8 (M.D. Fla. Mar. 26, 2010)

("[A] reviewing court may not reweigh the evidence or make additional findings not previously addressed by the ALJ.").   Because the good cause reasons provided by the ALJ to give little weight to Dr. Tyc's opinions are supported by substantial evidence, Claimant has not demonstrated reversible error.   *See Sickmiller v. Saul*, No. 8:19-cv-3087-SPF, 2021 WL 1186846, at *3 (M.D. Fla. Mar. 30, 2021) ("The Court . . . 'will not second guess the ALJ about the weight the treating physician's opinion deserves so long as the ALJ articulates a specific justification for it.'" (quoting *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015))).

B. <u>Dr. Elmore</u>.

The parties do not dispute that Dr. Elmore is also a treating psychologist.   *See* Doc. No. 29.   On July 25, 2018, Dr. Elmore signed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) form.   R. 995–97 (Exhibit 19F).   Regarding Claimant's mental abilities and aptitudes needed to do unskilled work, Dr. Elmore opined that Claimant was "limited but satisfactory" in most ways.   *See* R. 995. However, Dr. Elmore opined that Claimant was "unlimited or very good" in his ability to maintain regular attendance and be punctual with customary usually strict tolerances, as well as in his ability to ask simple questions or request assistance.   R. 995.   Dr. Elmore also opined that Claimant was "seriously limited" in his ability to perform at a consistent pace without an unreasonable number and length of rest periods.   *Id*.   In support of the serious limitation, Dr. Elmore stated

that "Mr. Axtell has difficulty working for a prolonged period of time due to his symptoms of dizziness and vertigo."   *Id.*

As to Claimant's mental abilities and aptitudes needed to do semiskilled and skilled work, Dr. Elmore opined that Claimant was seriously limited in his ability to understand, remember, and carry out detailed instructions, but that Claimant was otherwise "limited but satisfactory."   R. 996.   In support, Dr. Elmore stated that "Mr. Axtell displayed impaired immediate, short-term and working memory functioning on a variety of tests."   *Id.*   Dr.  Elmore further opined that Claimant was "unlimited or very good" in his mental abilities and aptitude needed to do particular types of jobs.   *Id.*   Finally, Dr. Elmore opined that Claimant's impairments or treatment would cause him to be absent from work more than four days per month, but that Claimant could manage benefits in his own best interest. *Id.*

In the decision, the ALJ stated as follows with regard to Dr. Elmore's opinions:

> Dr. Elmore, another Ph.D. clinician with a history of treating the claimant, submitted the same type of form as Dr. Tyc (19F).   In it, Dr. Elmore rendered a similarly inconsistent opinion finding mostly unlimited, very good, or satisfactory mental abilities, including unlimited or very good attendance and punctuality, while paradoxically asserting the claimant would be absent from work greater than four days per month.   Like Dr. Tyc, Dr. Elmore also offered physical symptoms outside of his specialization as support for the mental limitations he assessed (19F/1-2).   Accordingly, for the same reasons stated in regard to Dr. Tyc's opinion, Dr. Elmore's

opinion is internally inconsistent, unsupported, and incongruous with the overall record, and therefore receives little weight (20 CFR 416.927(c)(3) and (5)) (Hearing Testimony; 4E; 5E; 8F/4; 9F/7-8; 10F/30, 38, 44, 49; 12F/7; 19F; 22F/5).

R. 26.

In the joint memorandum, Claimant challenges the ALJ's conclusions regarding Dr. Elmore's opinions for essentially the same reasons Claimant challenges the ALJ's findings with regard to Dr. Tyc's opinions.   Doc. No. 29, at 25–27.   The Court finds these arguments unpersuasive for the same reasons as discussed above.

Claimant also contends that the ALJ failed to consider that Dr. Elmore and Dr. Tyc's opinions were consistent with each other, rendering the ALJ's assessment that Dr. Elmore's opinions were "internally inconsistent, unsupported, and incongruous with the overall record" incorrect.   Doc. No. 29, at 27.   Again, however, Claimant fails to address the records cited by the ALJ in stating that the doctors' opinions are inconsistent with the evidence of record, and Claimant once again does not address the internal inconsistencies with two doctors' opinions. Accordingly, to the extent that Claimant argues that the ALJ erred in giving little weight to both opinions because the opinions are consistent with each other, the Court rejects this argument.  *See generally Windish v. Astrue*, No. 8:06-cv-1842-T-TBM, 2008 WL 898743, at *5 (M.D. Fla. Mar. 28, 2008) ("[A]n ALJ may reject the opinions of even a treating doctor when the treating source's opinion are not

bolstered by the evidence, the evidence supports a contrary finding, or the treating source's opinion is conclusory or inconsistent with his or her own medical record." (citing *Phillips,* 357 F.3d at 1240–41)).[14]

In sum, because the ALJ gave good cause reasons, supported by substantial evidence, for giving little weight to Dr. Elmore's opinions, Claimant has not demonstrated reversible error.

## V.    CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1.    The Commissioner's final decision is **AFFIRMED**.

2.    The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner, and thereafter, to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on January 31, 2022.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

---

[14] The Court notes that Claimant cites to *Schink v. Comm'r of Soc. Sec.*, 935 F. 3d 1245 (11th Cir. 2019) in this portion of the joint memorandum.  *See* Doc. No. 29, at 27–28. However, although Claimant gives a recitation of the details in *Schink*, and the Court's holdings, Claimant nowhere applies *Schink* to the facts of this case nor demonstrates why *Schink* supports his position.   And upon review of *Schink*, the Court has independently determined no basis in that opinion that compels a different result in this case.

Counsel of Record
Unrepresented Parties